# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

## COLUMBIA DIVISION


SAMUEL ANTHONY WILDER,   )
                       )
           Petitioner,   )    Civil Action No.  3:11-187-MBS-JRM
                       )
v.                     )
                       )    **REPORT AND RECOMMENDATION**
WAYNE MCCABE ,Warden,   )
                       )
          Respondent.   )
_____)


      Petitioner, Samuel Anthony Wilder ("Wilder"), is an inmate with the South Carolina Department of Corrections serving a sentence of life plus five years imprisonment for murder and possession of a firearm during a crime of violence. Wilder's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was received by the Court on January 24, 2011. Respondent filed a return and motion for summary judgment on April 4, 2011.  Because Wilder is proceeding *pro se*, an order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) was issued on April 6, 2011 explaining to him his responsibility to respond to the motion for summary judgment. Wilder filed his response to Respondent's motion on July 14, 2011.

**Background and Procedural History**

A jury in Charleston County found Wilder guilty on May 5, 1999. He was represented at trial by Edward Brown, Esquire and Rita Roache, Esquire. The South Carolina Supreme Court summarized the facts presented at trial as follows:

> Petitioner and the victim were married for less than a year when she left him. There was evidence that petitioner's wife was afraid of him. Two days after moving out of the home they shared, the victim was shot dead. She was inside a club when shots were fired, and then patrons, including the victim, ran into the street. Several witnesses testified they observed a man with a gun in the club, and then saw him shoot the victim in the back once they were outside the club. These witnesses were unable to identify petitioner as the armed shooter. Another witness, Terrance Smalls, was inside the club, and did identify petitioner as the shooter. A bartender, Harold Wigfall, also identified petitioner as the man shooting the gun in the club. Witness Smith observed petitioner with the gun in the club, then saw him shoot the victim in the street, stand over her where she fell, and shoot her again. Witness Campbell also identified petitioner as the shooter, as did witness Washington. Moreover, other witnesses were able to identify the automobile in which the shooter fled the scene. When this car was found, it contained fired cartridges matching those found at the scene. The automobile belonged to petitioner.

(Wilder v. State, 388 S.C. 282, 696 S.E.2d 587 (2010)).

Wilder's attempts to attack his convictions have been marked by delay, *pro se* filing of extraordinary motions and actions, and disputes with his attorneys. Wilder has derogated the orderly procedure provided for review.

1. Direct Appeal

A notice of appeal was filed by the South Carolina Office of Appellate Defense. However, in contravention of South Carolina's policy against hybrid representation,[1] Wilder filed a *pro se* motion for a new trial. Eventually the Supreme Court dismissed the appeal without prejudice due to the motion pending in Circuit Court. Hearings were held on Wilder's motion for a new trial on

---

[1]*See* State v. Stucky, 333 S.C. 56, 508 S.E.2d 564 (1998).

November 9, 1999 (App. 618) and December 20, 2001 (App. 645). Wilder was represented by Andrew D. Grimes, Esquire. The motion was denied (app.678 and 841).[2]

Thereafter, a notice of appeal was filed, and Robert M. Dudek, Esquire, of the South Carolina Office of Appellate Defense was appointed to represent Wilder. Wilder then began efforts to have Mr. Dudek removed. By order of the South Carolina Court of Appeals of June 22, 2005, Mr. Dudek was removed and David Guy Pagliarini, Esquire, was appointed. However, Mr. Pagliarini was replaced by Milton Demetrios Stratos, Esquire. By order of the South Carolina Court of Appeals dated March 10, 2006, the appeal was dismissed for failure to comply with state procedural rules. (App. 843).[3]

2. Application for Post Conviction Relief ("PCR")

Wilder filed a PCR in the Court of Common Pleas for Charleston County on September 5, 2006 (App. 683), in which he alleged, *inter alia*, ineffective assistance of trial and appellate counsel. An evidentiary hearing was held on September 11, 2007. Wilder was represented by Charles Brooks, Esquire. Wilder and his trial attorney, Mr. Brown, testified. (App. 710). On November 12, 2007, the PCR court issued an order granting Wilder a direct appeal pursuant to White v. State, 263 S.C. 110, 108 S.E.2d 35 (1974),[4] but denying the PCR in all other respects. (App. 844).

---

[2]While the motion for new trial was pending, Wilder filed petitions for writs of habeas corpus in the Court of General Sessions for Charleston County and in this Court (*see* Wilder v. Catoe, 00:3257-24). Both were dismissed.

[3]Wilder's attempts to have the appeal reinstated were unsuccessful.

[4]White held that where a PCR court finds that a defendant did not voluntarily waive appeal, he may petition the Supreme Court to consider direct appeal issues.

3

3. PCR Appeal[5]

Mr. Brooks filed a "Notice of Appeal Out of Time" and a "Motion to File Appeal Out of Time" on May 14, 2008. The Supreme Court construed the motion as a petition for grant of certiorari and granted it. The South Carolina Office of Appellate Defense was initially appointed. Its motion for appointment of outside counsel was granted, and Tricia A. Blanchette, Esquire was appointed. Ms. Blanchette filed a motion to remand the case to the Circuit Court based on Wilder's failure to consent to relief under White and to be relieved as counsel. By order dated June 11, 2009, the Supreme Court denied the motion to remand but relieved Ms. Blanchette and appointed the South Carolina Commission on Indigent Defense to represent Wilder with the admonition that attorneys previously involved with Wilder not be assigned to his case. Wilder then filed a *pro se* motion for appointment of outside counsel which was denied by the Supreme Court on July 9, 2009.

Robert M. Pachak, Esquire, filed a brief on Wilder's behalf raising the following issues:

I.      Whether there was any evidence to support the PCR judge's findings
        that appellant should be granted a belated appeal?

II.     Whether the trial court erred and abused its discretion in refusing to
        allow a State's witness to be impeached with nine (9) counts of
        preparing false tax returns?

The appeal was dismissed on July 26, 2010 by the Supreme Court. *See* Wilder v. State, *supra*.

On August 9, 2010, after the Supreme Court had dismissed Wilder's appeal, he filed a *pro se* brief with the South Carolina Supreme Court attempting to raise the following issues:

I.      Whether White vs State is properly before this Court?

---

[5]After the PCR court ruled and before the appeal was filed, Wilder filed a second § 2254 petition in this Court. *See* Wilder v. Burt, 08-136-MBS-JRM. The petition was dismissed for lack of exhaustion on March 24, 2009.

II.      Whether Applicant must testify in open court at a post conviction hearing, to prove that he did not knowingly and intelligently waive his right to direct appeal to satisfy the Six and Fourteenth Amendments of the United States Constitution.

III.     Whether applicant must agree and consent in open court rather to forgo or accept the State's offer to a belated direct appeal, to forgo the fundamental right to a new direct appeal guaranteed by the Six and Fourteenth Amendments of the United States Constitution?

On August 13, 2010, the Supreme Court wrote Wilder and stated in part:

This will acknowledge receipt of your *pro se* brief in the above entitled matter. Since you are represented by counsel in this matter, no action will be taken on your *pro se* brief. Jones v. State, 348 S.C. 13, 558 S.E.2d 517 (2002); State v. Stuckey, 333 S.C. 56, 508 S.E.2d 564 (1998); Foster v. State, 298 S.C. 306, 379 S.E. 2d 907 (1989).

The Remittitur was returned on August 16, 2010.

The record shows a purported "Petition for Extraordinary Writ" dated October 18, 2010 filed in the original jurisdiction of the United States Supreme Court. Apparently, Wilder also filed a similar "extraordinary writ" in the South Carolina Supreme Court. (*See* Res.Mem., p. 18). It is unclear whether these petitions have been addressed.

**Grounds for Relief**

In his present petition, Wilder asserts he is entitled to a writ of habeas corpus on the following grounds:

**GROUND ONE**:     Ineffective Assistance of Appellate Counsel on First Appeal.

**SUPPORTING FACTS**: By failing to follow court's instruction and failing to timely inform the court that counsel was incompetent and could not perfect a direct appeal, thus allowing the appeal to be dismissed and failing to file timely motion to reinstate appeal. The state court made an unreasonable determination of facts in light of the evidence presented at the state court proceeding 2254(d)(2).

**GROUND TWO**:     Ineffective Assistance of Appellate Counsel Based on Conflict of Interest.

**SUPPORTING FACTS**: Joseph L. Savitz, III filed motion to relieve South Carolina Office of Appellate Defense because of a pending law suit filed by Petitioner that went to trial. The motion was granted on August 19, 2008, Tricia A. Blanchette Esquire was appointed. Then Tricia A. Blanchette on May 6, 2009 motioned to be relieved as counsel and that motion was granted on June 11, 2009. The South Carolina Appellate Defense was appointed again. The State court resulted in a decision that was contrary to clearly established Federal law as determined by the Supreme Court of the United States.

**GROUND THREE**:  Ineffective Assistance of Counsel on Post Conviction
Hearing.

**SUPPORTING FACTS**: Counsel gave the court false testimony concerning my direct appeal and the fundamental right to make [a] decision concerning my direct appeal was taken away from me by counsel and the court, and I never agreed or consented to White vs. State appeal.

**GROUND FOUR**:   Douglas v. California Violation.

**SUPPORTING FACTS**: The State allowed appellate counsel Robert Dudek to withdraw and remanding the appointment of counsel to the Charleston County Clerk for appointment of appellate Counsel violates Douglas v. California, 372 U.S. 353 (1963). The State's decision was contrary to clearly. Petitioner argued that the proper avenue when appellate counsel[] withdraws is to substitute counsel, so that appellant would never be without counsel at any time during first appeal. In [Douglas] the court recognized that the Fourteenth Amendment guarantee[s] a criminal appellant right to counsel on first appeal as of right. See Penson v. Ohio, 488 U.S. 75 (1988) where the court erred in allowing counsel to withdraw on appeal because defendant was without representation during the decision making process. The State resulted in a decision that was contrary to clearly established federal law, as determined by the Supreme Court of the Untied. States.

Wilder filed an amendment to his petition on March 10, 2011, raising the following additional

issues:[6]

1.    Inordinate delay in resolving Petitioner's request For Counsel pursuant to rule 603 (a)(3)(c) Petitioner has a fundamental right to counsel for the indigent, and this Request for Counsel was never

---

[6]On July 14, 2011, Wilder filed another motion to amend his petition to add claims he attempted to assert in his *pro se* brief filed after the South Carolina Supreme Court had dismissed his appeal in 2010.  This motion has been denied by separate order filed this date.

resolved resulting in a denial of Sixth Amendment Right to Counsel at a critical stage and violation of the Due Process Clause of the 14th Amendment of the United States Constitution parallel to the South Carolina Constitution. Art.I, § 3.

2. Petitioner's Sixth Amendment Right to Counsel at a critical stage, as well as the Due Process Clause and Equal Protection Clause of the 14th Amendment of the United States Constitution and parallel to the South Carolina Constitution. Art. I, § 3[,] by the unauthorized appearance of Attorney D. Scott Drescher, at Lieber Correctional Institution, posing as appointed counsel, and stating he was appointed to Petitioner's representation for new trial proceedings, and that he need[ed] a letter signed to retrieve my defense filed from trial counsel Edward Brown.

3. Ineffective assistance of counsel at a critical stage of his new trial proceeding, in as much as, Andrew Grimes[,] appointed counsel[,] prepared an amended new trial motion for the December 20, 2001 hearing, and the trial Judge did not have jurisdiction to hear new matters, in a denial of the Due Process Clause and Equal Protection Clause of the 14th Amendment of the United States Constitution and parallel to the South Carolina Constitution. Art. I, § 3.

4. Inordinate delay in resolving New Trial Motion and Arrest of Judgment filed in Charleston County on January 12, 2006 resulting in a violation of the Due Process Clause and Equal Protection Clause of the 14th Amendment of the United States Constitution and parallel to the South Carolina Constitution. Art. I, § 3.

5. Ineffective assistance of counsel for abandoning me during the Solicitor's investigation, allowing the Solicitor to visit the victim's mother's house to interview the children only weeks before trial and then allowing the child to testify against me during trial in violation of the sixth Amendment of the United States Constitution and the Solicitor's becoming an investigator violates the Due Process Clause of the 14th Amendment of the United States Constitution, as [well as] and Equal Protection of the 14th Amendment of the United States Constitution.

6. Ineffective assistance of counsel during trial by abandonment as counsel had knowledge that the State's prosecutor would investigate whether State's witness Scennie Murdaugh signed a statement before she testified against me at trial, the Prosecutor should never become an investigator in a case she is trying, all in violation of the Sixth

Amendment right to counsel and the Prosecutor violat[ed] the Due Process Clause of the 14th Amendment of the United States Constitution and the Sixth Amendment right to a fair trial.

7. Ineffective assistance of counsel before trial by failing to file suppression motion to suppress all evidence gathered by the Charleston City Police officers while out of Jurisdiction in Charleston County, in as much as, I was arrested at gun point by two city police officers, then one city police officer searched my car, and then conducted a show-up identification, and towed my car and I was made to stand with handcuff[s] on until a Charleston County Police Officer arrived all in violation of Tile 17-13-40 of the South Carolina Code Laws, South Carolina constitution. Art 1, § 10, and parallel to the United States Constitution, 4th Amendment.

8. Ineffective assistance of counsel before trial by failing to have blood evidence examined by expert or have expert testimony failing to have a gun residue expert at trial to examin[e] victim's clothes to learn how she was shot. The blood expert may have been able to impeach all of the State's witness[es'] testimony and the State witness[es] were also identification witness[es].

9. Ineffective assistance of counsel during trial by allowing the trial Judge to instruct the jury on less than proof beyond a reasonable doubt of each and every element of the crime of murder, whereas the trial judge failed to instruct the jury on the element of criminal intent in violation of the Due Process Clause and the 5th and 14th Amendment of the United States Constitution.

## Discussion

### A. Anti-Terrorism and Effective Death Penalty Act Standard of Review

Since Wilder filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). *See* Williams

v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court

must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.

* * *

[A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's

application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

**B. Statute of Limitations**

Respondent asserts that the petition should be dismissed because it was not timely filed under

the one-year statute of limitations created by the AEDPA. The AEDPA became effective on April

9

24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the Petitioner's conviction becomes final, not at the end of collateral review. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days

after the final ruling of the South Carolina Supreme Court. <u>Harris</u>, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." <u>Taylor v. Lee</u>, 196 F.3d 557, 561 (4th Cir. 1999). Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." <u>Crawley v. Catoe</u>, 258 F.3d at 399. A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "(A)n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." <u>Artuz v. Bennett</u>, 531 U.S. 4, 8 (2000) (footnote omitted). "When a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." <u>Pace v. DiGulielmo</u>, 544 U.S. 408, 414 (2005) quoting <u>Carey v. Saffold</u>, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a). <u>Hernandez v. Caldwell</u>, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but subject to the doctrine of equitable tolling. Equitable tolling applies only in "those rare instances where–due to circumstances external to the [Petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [Petitioner]." Harris, 209 F.3d at 330. Under § 2244(d), the State bears the burden of asserting the statute of limitations. Petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling. Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002). To benefit from the doctrine of equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way" preventing him from timely filing. Pace, 544 U.S. at 418. An attorney's mistake in calculating the filing date for a habeas petition relative to the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Lawrence v. Florida, 549 U.S. 327, 336-337 (2007) ("Attorney miscalculation [of a deadline] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."). See also Harris, 209 F.3d at 331.

During the long course of Wilder's efforts to attack his convictions, there were three periods of time in which there was no pending action which would toll the statute of limitations. After the Remittitur was returned on March 29, 2006 by the South Carolina Court of Appeals following dismissal of the direct appeal, nothing was pending until Wilder filed his PCR on September 5, 2006 (160 day). The statute of limitations was tolled during the pendency of the PCR. The order granting the White v. State appeal was issued on November 20, 2007 and pursuant to Rule 203(b)(1), SCACR, Wilder had 30 days to file his notice of appeal. It was not filed until the motion to file the appeal out of time was filed on May 14, 2008 and granted on June 12, 2008 (146 days). The appeal concluded

with the return of the Remittitur by the South Carolina Supreme Court on August 16, 2010. The envelope in which the present petition was received shows that it was received in the institutional mail room on January 20, 2011 (157 days). Therefore, there is a total of 463 days of untolled time during Wilder's process rendering his petition untimely. This is so even taking into account the holding in <u>Jimenez v. Quarterman</u>, ___ U.S. ___, 129 S.Ct. 681 (2009). In <u>Jimenez</u>, the Supreme Court held that when state courts grant a criminal defendant a belated appeal during collateral review, before defendant has filed a § 2254 petition, the date of finality of conviction pursuant to § 2244(d)(1)(A) is the conclusion of the out-of-time appeal, or the expiration of time for filing that appeal. However, courts have drawn a distinction between "finality" (§ 2244(d)(1)(A) and "pending" under § 2244(d)(2). *See* <u>Streu v. Dormire</u>, 557 F.3d 960, 967 n. 2 (8th Cir. 2009), <u>Gambrell v. Warden</u>, 2010 WL 883008 (D.S.C.), <u>Jones v. Warden</u>, 2010 WL 1791369 (D.S.C.), <u>Culp v. Warden</u>, 2010 WL 5060595 (D.S.C.).

### C. Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

> (A)  the applicant has exhausted the remedies available in the courts of the State; or

> (B)(i)  there is either an absence of available State corrective process; or

> (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

(2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3)  A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  *See* O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948.  In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and <u>Blakeley v. Rabon</u>, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 *et seq.* A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45. A PCR applicant is also required to state all of his grounds for relief in his application. *See*, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. <u>Simmons v. State</u>, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. <u>Marlar v. State</u>, 375 S.C. 407, 653 S.E.2d 266 (2007). In <u>Bostic v. Stevenson</u>, 589 F.3d 160, 162-65 (4th Cir. 2009), the Fourth Circuit held that, prior to the decision of the South Carolina Supreme Court in <u>Marlar</u>, that South Carolina courts had not consistently enforced a procedural bar based on the PCR applicant's failure to file a motion pursuant to Rule 59(e). Therefore, for matters in which the PCR court ruled prior to <u>Marlar</u> (i.e., November 5, 2007), this Court should not consider the failure of the applicant to file a Rule 59(e) motion to obtain a ruling on a properly raised issue as a procedural bar.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[7]  Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely.  Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims.  *See* Rose v. Lundy, *supra*.

### 2.    Procedural Bypass[8]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts.  If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition.  The United States Supreme Court has clearly stated that the procedural bypass of

---

[7]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

[8]This concept is sometimes referred to as procedural bar or procedural default.  If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

17

### 3.	Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.	Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty

of his claim, or show interference by state officials.  <u>Murray v. Carrier</u>; <u>Clozza v. Murray</u>, 913 F.3d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); and <u>Clanton v. Muncy</u>, 845 F.2d 1238 (4th Cir.), *cert. denied*, 485 U.S. 1000 (1988).  Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective.  <u>Wise v. Williams</u>, 982 F.2d 142, 145 (4th Cir. 1992) *cert. denied*, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause.  <u>Hoke v. Netherland</u>, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996).  Further, the claim of cause must itself be exhausted.  <u>Edwards v. Carpenter</u>, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice.  <u>Tucker v. Catoe</u>, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000).  Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice.  <u>Satcher v. Pruett</u>, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default.  <u>O'Dell v. Netherland</u>, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997).  To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence.  <u>Royal v. Taylor</u>, 188 F.3d 239 (4th Cir. 1999).  A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence.  <u>Matthews v. Evatt</u>, 105 F.3d 907, 916 (4th Cir. 1997).

### 5.    Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents.  <u>Gray v. Netherland</u>, 518 U.S. at 165-66.  It is petitioner's burden to raise cause and

prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted

claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

The only issues properly presented to the South Carolina Supreme Court were those contained

in the brief during the White v. State appeal, i.e., whether evidence supported a late appeal and

whether the trial court abused its discretion in refusing to allow a state's witness to be impeached

with nine convictions for preparing false tax returns. The Supreme Court determined that evidence

for appeal was sufficient, and with respect to the evidentiary issues found:

> Under Rule 608(b)(1), a trial judge may allow a witness to be cross-examined
> about "specific instances of [that witness's] conduct" if the trial judge, in his
> discretion, finds these instances probative of the witness's credibility. An abuse of
> discretion occurs when the trial court's ruling lacks evidentiary support or where it is
> controlled by an error of law. *E.g.*, State v. McDonald, 343 S.C. 319, 540 S.E.2d 464
> (2000). Here, the trial judge committed such an error when he held that preparing
> false tax returns was not conduct probative of Murdaugh's credibility. *Compare* In re
> Hamer, 342 S.C. 437, 537 S.E.2d 552 (2000) (filing false tax returns is a "serious
> crime" adversely reflecting on a judge's honesty and trustworthiness).

> In order for this Court to reverse petitioner's convictions and sentences,
> however, we must find that the trial court's error prejudiced petitioner. Since
> Murdaugh was merely one of six eye witnesses to identify petitioner as the shooter,
> there were other witnesses whose testimony was consistent with that of the
> identifying witnesses, and physical evidence linked petitioner in the murder, her
> testimony was merely cumulative to other overwhelming evidence of guilt. As such,
> reversal is not warranted here. *E.g.*, State v. Simmons, 384 S.C. 145, 682 S.E.2d 19
> (Ct.App.2001).
> The impeachment issue was presented and decided as a matter of state law.

"Under 28 U.S.C. § 2241, a federal court may not issue a writ of habeas corpus on the basis

of a perceived error of state law." Pulley v. Harris, 465 U.S. 37 (1984), Lewis v. Jeffers, 497 U.S.

764 (1990). "Because federal habeas corpus relief does not lie for errors of state law . . ., federal

habeas review of a state court's application of [state law] is limited." Wilder presented this issue and

it was addressed purely as a matter of state law. Even if the Supreme Court incorrectly applied South

Carolina law (which it could not as the court of last resort), Wilder would not be entitled to habeas relief.

### Conclusion

Based on a review of the record, it is recommended that Respondent's motion for summary judgment be **granted**, and the petition **dismissed** without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina
February 21, 2012

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).